# United States Court of Federal Claims

No. 15-554 C
(Filed: September 26, 2016)

|  |  |
|---|---|
| PARK PROPERTIESS ASSOCIATES, L.P. et al. | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

*Thomas A. Gentile*, Wilson, Elser, Moskowitz, Edelman, & Dicker, LLP, Florham, New Jersey, for Plaintiff.

*John Jacob Todor*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**SMITH, Senior Judge**

      This is a follow-on case to *Park Properties Associates, L.P. v. United States*, Fed. Cl. No. 04-1757C (*Park Properties I*), in which three property owners, including the two plaintiffs in this case, Park Properties Associates, L.P., ("Park Properties") and Valentine Properties Associates, L.P., ("Valentine Properties") brought breach of contract claims alleging that Congress' 1994 amendments to the Section housing program breached their Housing Assistance Payments ("HAP") contracts with the United States Department of Housing and Urban Development ("HUD"). The Court held that Congress' 1994 amendments breached the plaintiffs' HAP contracts, but plaintiffs were not entitled to damages based on their renewal HAP contracts. In this case, plaintiffs contend that their renewal contracts should be reformed to reflect the higher rent levels consistent with the damages calculations used in *Park Properties I*. This action is before the Court on plaintiffs' motion for summary judgment and defendant's motion to dismiss.

## I.     Findings of Fact

Plaintiffs, Park Properties Associates, L.P., and Valentine Property Associates (together "the Properties"), are the owners of two multifamily properties located in Yonkers, New York, and participants of the Section 8 housing program. Amended Complaint, ECF No. 11 (hereinafter "Am. Compl."), at 3. Park Properties entered into a Housing Assistance Payment Contract "HAP Contract" with the HUD for an 83-unit multifamily property known as La Martine Terrace ("La Martine") which was designated with HUD project number NY 36-0010-003. Am. Compl. at 8. Valentine entered into a HAP contract with HUD for a 110-unit multifamily property known as Lane Hill Citizens Residence ("Lane Hill") which was designated with HUD project number NY 36-0003-011. *Id.* Pursuant to the La Martine and Lane Hill contracts (collectively "the HAP contracts"), HUD was to provide housing assistance payments to plaintiffs for units in both properties under lease by lower-income families. *Id.* According to 42 U.S.C. §1437(c)(1), the housing assistance payments provided by the government are designed to reimburse plaintiffs for the difference between the rent called for under the HAP contracts and the amount paid by each family. *Id.*

The original contract for the La Martine project expired on May 31, 2009. *Id.* The original contract for Lane Hill expired on January 1, 2010. *Id.* Upon the expiration of the contracts, plaintiffs were not paid for five (5) months as they negotiated with HUD. Plaintiffs eventually requested a renewal as an exception project and entered into a series of short-term renewal contracts of varying lengths, each less than one year. Am. Compl. at 6. In January of 2011, both plaintiffs entered into long-term 20-year HAP contracts. Am. Compl. at 12-13.

### A.     The 1994 and 1997 Amendments

The payments to the owners under the original HAP contracts were subject to "automatic annual adjustments," which raised the per-unit rent by a factor published annually by HUD. Am. Compl. at 4. In 1994, Congress amended Section 8 of the U.S. Housing Act, 42 U.S.C. § 1437f, by requiring that, when rents exceed fair market rentals, a property owner had to demonstrate that the adjusted rent would not materially exceed comparable rents in order to be eligible for an annual adjustment. Defendant's Motion to Dismiss, ECF 20 (hereinafter "MTD."), at 3. Congress also amended Section 1437f(c)(2)(A) to require a one percent reduction of the annual adjustment factors for any units occupied by the same tenant during the past year. *Id.*

The 1994 amendments caused the government to provide plaintiffs with lower rent adjustments compared to what plaintiffs were entitled to under the HAP contracts. Am. Compl. at 9-10. After the 1994 amendments, HUD ceased making automatic annual adjustments of the respective contract rents on the HAP contracts' anniversary dates as required by the terms of the HAP contracts. *Id.* This resulted in substantially lower housing assistance payments being made by HUD to plaintiffs each month. *Id.*

In 1997, Congress further amended Section 8 through passage of the Multifamily Assisted Housing Reform and Affordability Act of 1997 ("MAHRAA"). Am. Compl. at 5. The purpose of MAHRAA was to preserve low-income rental housing affordability and availability. *Id.* MAHRAA provided for the restructuring of mortgages going into default, and it further reduced rents. *Id.* MAHRAA also contained provisions designed to compel the owners of Section 8 housing projects to renew their contracts on terms and conditions dictated by the statute and HUD, who drafted the contracts. *Id.* Under MAHRAA, HUD was required to relocate tenants only where HUD did not want to renew the contract. *See* MAHRAA § 516(d)(2).[1] Rent subsidy payments would terminate under MAHRAA on the contract expiration unless the contract was renewed, even if tenants were still in the building. Am. Compl. at 6.

The MAHRAA provides for two types of rents for renewed contracts: (1) rents under MAHRAA § 524(a)(4) and (2) "exception rents," under MAHRAA § 524(b)(1). *Id.* MAHRAA requires contracts to provide for exception rents at the request of the owner in either of two circumstances: (1) where the project is not an eligible multifamily housing project under MAHRAA § 512(2), or (2) where the project is exempt from mortgage restructuring and rental assistance sufficiency plans under MAHRAA § 524(h). *Id.* A project is not an eligible multifamily housing project under MAHRAA § 512(2) if the project was not financed by a mortgage insured or held by the Secretary of HUD under the National Housing Act. *See* MAHRAA § 512(2)(C). The HUD Secretary may treat a project as an eligible multifamily housing project for purposes of MAHRAA under certain circumstances even if the project otherwise does not meet all of the requirements of § 512(2). Am. Compl. at 7. However, the project owner must (1) consent to such treatment, and (2) the project must have qualified as an eligible multifamily housing project at some time prior to renewal. *See* MAHRAA § 512. Plaintiffs' buildings are not financed by any government mortgages or guarantees. Plaintiffs have neither consented to being treated as an eligible multifamily housing project nor do they qualify as an eligible multifamily housing project. Am. Compl. at 7.

MAHRAA § 524(b), the provision on exception rents, provides for the lesser of adjusted existing rents or budget-based rents. *Id.* During the relevant time period, budget-based rents for plaintiffs' projects were higher than adjusted existing rents. *Id.* The rents to be applied to the renewal contracts were the existing rents as of the last month of the expiring contract, as adjusted by an operating cost adjustment factor ("OCAF") established by the HUD Secretary. *See* MAHRAA § 524(b)(1). HUD has published an OCAF applicable to both of plaintiffs' properties. Am. Compl. at 8.

---

[1] The HAP contracts and HUD regulations require the owners to give a year's notice to HUD and all tenants if they do not intend on renewing their contract to allow HUD sufficient time to relocate the tenants. Am. Compl. at 6.

### B. The 2006 Decision

In 2004, three property owners, including the two plaintiffs in this case, brought breach of contract claims, alleging that HUD breached their HAP contracts by failing to make housing assistance payments in amounts that corresponded to the automatic annual adjustment and seeking damages for the difference between the amounts due under the contract and the substantially lower amounts paid by HUD to plaintiffs. *See Park Properties Associates, L.P. v. United States*, 74 Fed. Cl. 264, 265-66 (2006) (Allegra, J.) (*Park Properties I*).

In 2006, this Court held that Congress' 1994 Amendments repudiated and breached the plaintiffs' HAP contracts. *Park Properties I*, 74 Fed. Cl. at 274. In a subsequent damages opinion, the Court held, among other things, that the plaintiffs were not entitled to recover damages based on their renewal HAP contracts on the grounds that plaintiffs had waived the argument and because such damages were not foreseeable at the time of the original HAP contracts. *Park Properties Associates, L.P. v. United States*, Fed. Cl. No. 04-1757C (September 19, 2015) (unpublished) *Park Properties Associates L.P. v. United States*, No.04-1757C, (Fed.Cl.Sep.19th, 2015). Following the Court's ruling, the parties submitted a joint stipulation quantifying damages pursuant to the Court's opinion. Stipulation, *Park Properties I*, No. 04-1757C, ECF No. 162, (Fed. Cl. Oc. 31, 2014). On November 4, 2014, the clerk entered judgment in favor of each of the three plaintiffs in the amounts set forth in the joint stipulation. *Park Properties I*, Nov. 4, 2014, ECF No. 164. This complaint followed, requesting this Court to reform the renewal contracts to reflect the higher rent levels consistent with the damages calculations used in *Park Properties I*, and damages for the difference between the rental rate levels in the reformed renewal contracts and those in the unreformed renewal contracts. Am. Compl. at 1.

## II. Discussion

### A. Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

When the Court's subject matter jurisdiction to hear a case is challenged, the plaintiff has the burden of establishing by a preponderance of the evidence that this Court has jurisdiction

over its claims. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). Motions to dismiss under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") test the legal sufficiency of a complaint in light of RCFC Rule 8(a), which requires "a plausible 'short and plain' statement of the plaintiff's claim, showing that the plaintiff is entitled to relief." *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013) (quoting *Skinner v. Switzer*, 131 S. Ct. 1289, 1291 (2011)). Although a complaint "does not need detailed factual allegations," the plaintiff must plead enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a motion to dismiss for failure to state a claim, the Court must accept plaintiff's factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Nonetheless, the Court should dismiss a complaint "when the facts asserted by [the] claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

Summary judgment is appropriate when the evidence indicates that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A "genuine" dispute is one that "may reasonably be resolved in favor of either party," and a fact is "material" if it might significantly alter the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248, 250. In determining the propriety of summary judgment, the Court will not make credibility determinations, and will draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

### B. Privity

In its motion to dismiss, defendant argues that plaintiffs lack privity with HUD because HUD is not a party to the renewal contracts. Highlighting that the renewal contracts are technically between the owners and the New York State Housing Trust Fund Corporation ("NYSHTFC"), HUD argues that no privity of contract exists here, and thus, the Court has no jurisdiction to even entertain this action under the Tucker Act. MTD at 9. This Court does not agree.

The terms of the contract create privity between the owners and HUD. Section 4(a)(2) of the contract provides that HUD is party to provisions of the renewal contract. One of these provisions is in Paragraph 11, in which HUD agrees to correct any default if the Public Housing Agency ("PHA") breaches the contract, as well as agrees to continue assistance payments to the owners. Complaint, Exhibit A, ECF 1, (hereinafter "Compl. Ex. A") at 11. Furthermore, although the NYSHTFC is listed as the Contract Administrator, HUD is a signatory to this contract. *Id*. at 13.

HUD is directed by statute to offer renewal contracts. MAHRAA § 402.5(a). An exception exists under 42 U.S.C. § 1437f, which provides that, where a PHA initiates, contracts, and administers a contract with a local property owner, and where HUD's only contract is to pay the PHA, no privity exists between HUD and the property owner. 42 U.S.C. § 1437f. However, the controlling provision of this exception indicates that the PHA *must* initiate, contract, and administer the contract in order to avoid that privity. *Id*. The NYSHTFC did not initiate the renewal contracts. Rather, according to the contract provisions themselves, HUD, as the Contract Administrator, "may assign the Renewal Contract to a [PHA] for the purpose of PHA administration of the Renewal Contract, as Contract Administrator, in accordance with the Renewal Contract (during the term of the annual contributions contract ("ACC") between HUD and the PHA)." Compl. Ex. A at 9. HUD initiated the renewal contracts and then assigned them to the NYSHTFC. The NYSHTFC did not itself initiate, negotiate, or administer those contracts. As the NYSHTFC did not initiate, negotiate, or administer the renewal contracts, the NYSHTFC has no authority to perform under those renewal contracts. Therefore, despite HUD's attempt transfer the renewal contracts to the NYSHTFC, HUD has not escaped privity with the property owners.

### C.     Breach of Contract

In its motion to dismiss, defendant argues that the plaintiffs have not alleged a breach of the renewal contracts because they have not identified a specific provision that has been breached. MTD at 18. In their motion for summary judgement, plaintiffs argue that HUD intentionally breached the renewal contracts by applying the wrong preexisting rents in determining what the renewal rents would be. Plaintiff's Motion for Summary Judgment, ECF 30 (hereinafter "P's MSJ") at 7. In 2006, this Court held that Congress' 1994 Amendments repudiated and breached the plaintiffs' original HAP contracts. *Park Properties I*, 74 Fed. Cl. at 274. As a result of that holding, the plaintiffs' rents should have been upwardly adjusted, but HUD failed to effect that adjustment. A final judgment on this issue was released in 2014, following a joint stipulation in which the parties agreed as to what the contractual rent amount should have been if the breach had not occurred. HUD did not appeal the 2014 order, and plaintiffs argue that the renewal contracts should have been recalculated to reflect the correct preexisting rents. P's MSJ at 9. This Court agrees with plaintiffs' assertion.

"It is a principle of the widest application that equity will not permit one to rely on his own wrongful act." *Deitrick v. Greanley*, 309 U.S. 190, 196 (1940). In the case at bar, HUD is relying on the fact that it did not effectuate the judicially required rent adjustment prior to entering into the renewal contracts to argue that those adjustments are not required for the current contracts at issue. This Court does not agree with that assessment. The Court of Claims, has previously held that "[t]his court may exercise equity jurisdiction to the extent of reforming contracts and base its decree upon the contract as reformed." *Pocono Pines Assembly Hotels Co. v. United States,* 73 Ct.Cl. 447, 482 (1932). Additionally, "[t]he courts have in the past allowed reformation of a contract based on mutual mistake of fact." *Edwards v. U.S.*, 19 Cl.Ct. 663, 674 (1990) (s*ee Bowen–McLaughlin–York Co. v. United States,* 813 F.2d 1221, 1222

6

(Fed.Cir.1987)); *American Employers Ins. Co. v. United States,* 812 F.2d 700 (Fed.Cir.1987); *Southwest Welding & Mfg. Co. v. United States,* 179 Ct.Cl. 39, 52–53, 373 F.2d 982, 989–91 (1967); *National Presto Indus., Inc. v. United States,* 167 Ct.Cl. 749, 338 F.2d 99 (1964), *cert. denied,* 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1965)).

A mutual mistake is defined by the Restatement (Second) of Contracts, section 151 as "a belief that is not in accord with the facts." *Hartle v. U.S.*, 22 Cl.Ct. 843, 846 (1991) (citing *Summit Timber Co. v. United States,* 230 Ct.Cl. 434, 445 (1982)). "[A] mistake, in order to justify rescission, must relate to the intrinsic nature of the bargain.... [A] mistake vitally affecting a fact or facts on the basis of which the parties contracted renders their contract voidable by an injured party." *Hartle*, 22 Cl.Ct. at 846 (citing *Higgs v. United States*, 212 Ct.Cl. 146, 150 (citing 13 *Williston on Contracts* § 1544 (3d ed. 1970))). As such, it follows that mutual mistake is also grounds for reformation.

The restatement expounds upon this in stating the following:

> Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

*Restatement (Second) of Contracts,* § 152 (1981); *see also National Presto*, 167 Ct.Cl. at 761.

The renewal HAP contracts were entered into in 2011, before the 2014 final judgment on the original contract rents. Am. Compl. at 12-13. The 2014 decision set out the agreed upon preexisting rents. At the time of that decision, the renewal contracts should have been adjusted to reflect those new rents. Had the adjusted rents been in place at the onset of the renewal contracts, the rents included therein would have been higher and in accordance with the 2014 decision. As a result of the mistakenly applied rents, the defendant has breached the renewal contracts in failing to pay the rental amount that should have been paid but for the mistake made in contracting the renewals.

Equitable principles require a finding that the plaintiff should be put in the same position it would have been in if the government had not breached its contract. There is no disagreement among the parties that, but for the breach, plaintiff would be receiving the rental amount it now seeks. To deny them those rents would be to allow the government to profit significantly from its breach at the expense of the plaintiffs and at the expense of its reputation for fair dealing. As such, we must agree with plaintiffs and order the reformation they seek. Plaintiffs are entitled to a recalculation of the rents for the period beginning with the initiation of the renewal contracts.

**III.     Conclusion**

       For the reasons set forth above, defendant's MOTION to dismiss is **DENIED**. Additionally, plaintiffs' MOTION for Summary Judgement is **GRANTED**.  On or before Monday, November 28, 2016, the parties shall submit to this Court a stipulation of the amount owed by the government to the plaintiffs.

       **IT IS SO ORDERED.**

       s/ *Loren A. Smith*

       Loren A. Smith,
       Senior Judge