# United States Court of Federal Claims

No. 15-554 C
(Filed: May 2, 2017)

|  |  |
|---|---|
| PARK PROPERTIESS ASSOCIATES, L.P. et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

*Thomas A. Gentile*, Wilson, Elser, Moskowitz, Edelman, & Dicker, LLP, Florham, New Jersey, for Plaintiffs.

*John Jacob Todor*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION, ORDER, AND STIPULATION QUANTIFYING DAMAGES AND FOR ENTRY OF JUDGMENT

**SMITH, Senior Judge**

  Pursuant to the Opinion issued by this Court on September 26, 2016, in which the Court requested a stipulation of damages by both parties consistent with the findings and the damage calculations used in *Park Properties Associates, L.P. v. United States*, Fed. Cl. No. 04-1757C ("Park Properties I"), this Court awards plaintiffs $7,867,018.00 in total damages. Of those damages, Park Properties Associates, L.P. ("Park Properties") is entitled to $3,740,067.00, and Valentine Property Associates ("Valentine") is entitled to $4,126,951.00.

  **I.  Findings of Fact[1]**

  Plaintiffs, Park Properties and Valentine (together "the Properties"), are the owners of two multifamily properties located in Yonkers, New York, and participants in the Section 8 housing program. Amended Complaint (hereinafter "Am. Compl.") at 3. Park Properties

---

[1] A full recitation of the facts may be found at *Park Properties Associates, L. P. v. United States*, No. 15-554C (2016).

entered into a Housing Assistance Payment Contract ("HAP Contract") with the Department of Housing and Urban Development ("HUD") for an 83-unit multifamily property known as La Martine Terrace ("La Martine") which was designated with HUD project number NY 36-0010-003.  Am. Compl. at 8.  Valentine entered into a HAP contract with HUD for a 110-unit multifamily property known as Lane Hill Citizens Residence ("Lane Hill") which was designated with HUD project number NY 36-0003-011.  *Id.*  Pursuant to the La Martine and Lane Hill contracts (collectively "the HAP contracts"), HUD was to provide housing assistance payments to plaintiffs for units in both properties leased by lower-income families.  *Id.*  According to 42 U.S.C. §1437(c)(1), the housing assistance payments provided by the government are designed to reimburse plaintiffs for the difference between the rent called for under the HAP contracts and the amount paid by each family.  *Id.*

### A.     The 1994 and 1997 Amendments

The payments to the owners under the original HAP contracts were subject to "automatic annual adjustments," which raised the per-unit rent by a factor published annually by HUD.  Am. Compl. at 4.  In 1994, Congress amended Section 8 of the U.S. Housing Act, 42 U.S.C. § 1437f, by requiring that, when rents exceed fair market rentals, a property owner had to demonstrate that the adjusted rent would not materially exceed comparable rents in order to be eligible for an annual adjustment.  Defendant's Motion to Dismiss (hereinafter "MTD") at 3.  The 1994 amendments caused the government to provide plaintiffs with lower rent adjustments compared to what plaintiffs were entitled to under the HAP contracts.  Am. Compl. at 9-10.  After the 1994 amendments, HUD ceased making automatic annual adjustments of the respective contract rents on the HAP contracts' anniversary dates as required by the terms of the HAP contracts.  *Id.*  This resulted in substantially lower housing assistance payments being made by HUD to plaintiffs each month.  *Id.*

In 1997, Congress further amended Section 8 through passage of the Multifamily Assisted Housing Reform and Affordability Act of 1997 ("MAHRAA").  Am. Compl. at 5.  MAHRAA provides for two types of rents for renewed contracts: (1) rents under MAHRAA § 524(a)(4) and (2) "exception rents," under MAHRAA § 524(b)(1).  Am. Compl. at 6.  MAHRAA requires contracts to provide for exception rents at the request of the owner in either of two circumstances: (1) where the project is not an eligible multifamily housing project under MAHRAA § 512(2), or (2) where the project is exempt from mortgage restructuring and rental assistance sufficiency plans under MAHRAA § 524(h).  *Id.*  Plaintiffs' buildings are not financed by any government mortgages or guarantees.  Plaintiffs have neither consented to being treated as an eligible multifamily housing project nor do they qualify as an eligible multifamily housing project.  Am. Compl. at 7.

MAHRAA § 524(b), the provision on exception rents, provides for the lesser of adjusted existing rents or budget-based rents.  *Id.*  During the relevant time period, budget-based rents for plaintiffs' projects were higher than adjusted existing rents.  *Id.*  The rents to be applied to the renewal contracts were the existing rents as of the last month of the expiring contract, as adjusted

by an operating cost adjustment factor ("OCAF") established by the HUD Secretary. *See* MAHRAA § 524(b)(1). HUD has published an OCAF applicable to both plaintiffs' properties. Am. Compl. at 8.

### B. The 2006 Decision

In 2004, three property owners, including the two plaintiffs in this case, brought breach of contract claims alleging that HUD breached their HAP contracts by failing to make housing assistance payments in amounts that corresponded to the automatic annual adjustment and seeking damages for the difference between the amounts due under the contract and the substantially lower amounts paid by HUD to plaintiffs. *See Park Properties Associates, L.P. v. United States*, 74 Fed. Cl. 264, 265-66 (2006) (Allegra, J.) (*Park Properties I*). In 2006, this Court held that Congress' 1994 Amendments repudiated and breached the plaintiffs' HAP contracts. *Park Properties I*, 74 Fed. Cl. at 274. Following the Court's ruling, the parties submitted a joint stipulation quantifying damages pursuant to the Court's opinion. *Park Properties I*, October 31, 2014 (ECF No. 162). On November 4, 2014, the clerk entered judgment in favor of each of the three plaintiffs in the amounts set forth in the joint stipulation. *Park Properties I*, November 4, 2014 (ECF No. 164).

### C. This Court's Decision

On May 29, 2015, plaintiffs filed a complaint, requesting this Court reform the renewal contracts to reflect the higher rent levels consistent with the damages calculations used in *Park Properties I*, and for damages amounting to the difference between the rental rate levels in the reformed renewal contracts and those in the unreformed renewal contracts. Am. Compl. at 1. This Court granted plaintiffs' Motion and ordered the parties to submit a stipulation of the costs with supporting documentation and calculations for damages. On December 16, 2016, plaintiffs submitted a memorandum presenting their damage calculations. On January 16, 2017, defendant submitted a response to plaintiffs' calculations with its version of appropriate damage calculations. On January 27, 2017, plaintiffs submitted their reply in support of their memorandum on damages. On January 31, 2017 this Court held Oral Argument regarding the same. On February 8, 2017 plaintiffs filed a memorandum challenging defendant's statements during oral arguments. On February 14, 2017 the defendant filed a Motion to Strike that memorandum, and on February 28, 2017, defendant filed a Motion for supplemental authority. On March 3, 2017, plaintiffs responded to defendant's motions. This case is now fully briefed and ripe for decision.

## II. Discussion

### A. Plaintiffs' Damages

Plaintiffs began their damages calculation by using pre-existing rents from the 2014 stipulation in *Park Properties I* for each apartment type. Plaintiffs' Memo at 1 ("P's Memo").

Those rents were then multiplied by the applicable Operating Cost Adjustment Factor ("OCAF's") published annually in the Federal Register. *Id.* In the succeeding years, the starting point rent for each apartment type was the prior year's rent multiplied by the applicable OCAF for each subsequent year. *Id.*

The underpayment was determined by subtracting the actual rent paid in any given year from that year's newly determined rent, as explained above, for each period per apartment by apartment type. *Id.* This calculation provided the monthly contract underpayment amount. *Id.* This number was then multiplied by the number of apartments of each type to establish the monthly underpayment by apartment type. P's Memo at 2.

The contract periods for Valentine were all for one year, so each monthly underpayment was multiplied by 12 to determine the annual underpayment for each apartment type. *Id.* Those numbers were then added together for the total damage calculation for Valentine, which plaintiffs calculated as $4,148,101.06. *Id.* The contract periods varied for Park Properties, so the monthly underpayment was multiplied by the relevant months. *Id.* The damages for each apartment type were added together to form the total damage calculation for Park Properties, which plaintiffs calculated as $3,769,625.93. *Id.*

Next, plaintiffs calculated vacancy damages in accordance with the 2014 stipulation. Vacancy damages were added to the above damage number to establish the plaintiffs' total damage calculation for each property. P's Memo at 2. First, plaintiffs reviewed vouchers submitted to HUD to determine the days vacant for each apartment type by contract period. *Id.* The total number of days in which there was a vacancy was then divided by 30 to establish a "monthly vacancy" percentage. That percentage was then multiplied by the new "OCAF Adjusted Contract Rent" to determine the dollar vacancy total by apartment type for each contract period. *Id.* The vacancy totals for each unit were added together and then multiplied by 80 percent, as government regulations provide for an 80 percent payment for vacant apartments. *Id.* This number represented the gross total vacancies. Plaintiffs note that no vacancy payments were made in the past. *Id.* The total vacancy damages for Valentine were calculated as $46,495.15, and the vacancy damages for Park Properties were calculated to be $53,745.17. *Id.* Thus, the grand total for all damages under the plaintiffs' calculations is $8,017,967.31.

### B. Defendant's Damages

The defendant's starting point is a "but-for" rent drawn from the comparability studies that plaintiffs provided HUD in 2010. Those studies were provided in 2010 in an effort to justify rents at that time, but they are unrelated to this Court's proceedings. Defendant's Response Memorandum at 4 ("D's Resp."). Defendant applies the OCAF as originally included in letters to plaintiffs as part of the contracting process. *Id.* "The difference between the ["but-for"] rent and the actual contract rent represents the damages per unit, which was then multiplied by the number of months for that contract period." *Id.*

4

The defendant deducted vacancy damages from the gross damages for each apartment type. *Id.* Defendant used the numbers that plaintiffs submitted in their memo on damages calculations, calculated the daily value of the underpayment, and then multiplied that amount by the number of days vacant. *Id.* This "vacancy deduction" was subtracted from defendant's gross damages calculation, which defendant determined was the net damages for each apartment type per contract period. *Id.*

Defendant calculated the total damages for Valentine as $40,936.00. D's Resp. Exhibit A at 7. The defendant calculated the total damages for Park Properties as $1,287,960.00. *Id.* The total damage award proffered by defendant was $1,328,896.00. *Id.*

### C. This Court's Calculation

This Court was looking for a straightforward calculation of damages similar to those stipulated in *Park Properties I*. This Court looked to the calculations provided by both parties to determine the damage award. The biggest discrepancy between the two sets of calculations is the baseline rent to which the OCAF was applied and the rent that should have been paid but for the breach. The plaintiffs used the rent for each apartment type and property as set forth in the 2014 Stipulation from *Park Properties I*. They then multiplied this number by the OCAF. In subsequent years, the "but-for" rent was calculated by using the previous years' rent multiplied by the subsequent year's OCAF. This calculation uses similar calculations to those used in the 2014 Stipulation. Defendant's vacancy deduction, which used plaintiffs' numbers, was then subtracted from the gross total damages. The Court has determined the damages to be as follows:

| | |
|---|---|
| Park Properties Associates, L.P. | $3,740,067.00 |
| Valentine Properties Associates, L.P. | $4,126,951.00 |
| Total damage award | $7,867,018.00 |

### D. Plaintiffs' Memorandum and Defendant's Motion to Strike

On February 8, 2017, plaintiffs filed a memorandum proffering their status as falling under MAHRAA § 524(b), which deals with exception contracts, as opposed to the provisions of MAHRAA § 524(a). On February 14, 2017, defendant filed a Motion to Strike that memorandum as untimely and because plaintiffs were not given leave to file said memorandum by this Court. While this Court agrees that plaintiffs' memorandum was untimely filed, it should be noted that neither the memorandum's filing, nor the action of striking that memorandum from the record is outcome determinative. It is already well established by the Opinion issued on September 26, 2016, that the HAP contracts in this case are governed by MAHRAA § 524(b), the provision on exception rents. The memorandum filed on February 8, 2017 was superfluous.

However, as defendant is correct in its assertion that said memo was untimely, this Court grants defendant's Motion to Strike the same.

### E.  Defendant's Notice of Supplemental Authority

On February 28, 2017, defendant filed a Motion for leave to file notice of supplemental authority, asking this Court to consider the 7th Circuit's ruling in *Evergreen Square of Cudahy v. Wisconsin Housing & Economic Development Authority*, No. 16-1475, 2017 WL 657438 (7th Cir. Feb. 17, 2017).  This Court grants that Motion.  However, on March 3, 2017, plaintiffs filed a response to that motion, and this Court is persuaded by plaintiffs' argument that the facts in *Evergreen* are distinguishable from the instant case.  As a result, though this Court grants the Motion to file notice of supplemental authority, such a filing will not be outcome determinative, and Opinion dated September 26, 2016 remains unchanged.

### III.   Conclusion

For the reasons set forth above, defendant's MOTION to strike and defendant's MOTION for leave to file supplemental authority are **GRANTED**.  Additionally, plaintiffs are awarded $7,867,018.00 in total damages.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*
Loren A. Smith,
Senior Judge